## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JORDAN SMITH,<br>    *Plaintiff*, | |
| v. | No. 3:19cv206 (MPS) |
| DANIEL PAPOOSHA, et al.,<br>    *Defendants*. | |

## RULING ON MOTION TO DISMISS

Jordan Smith has sued officials of the Connecticut Department of Correction ("DOC") for alleged constitutional violations related to his designation as a member of a "Security Risk Group," i.e., the Bloods street gang, during his stay as a DOC inmate.  The Defendants have moved to dismiss the Plaintiff's Second Amended Complaint.  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

I assume familiarity with (1) the allegations of the Second Amended Complaint (ECF No. 81), (2) the parties' briefs (ECF Nos. 63-1 & 90), and (3) the Defendants' renewed motion to dismiss (ECF No. 84).

## 1.    Statute of Limitations

Defendants Danek, Mann, Michaud, and Mancini argue that the statute of limitations has expired as to the Plaintiff's claims against them, and that those claims must therefore be dismissed. I agree.  These defendants were identified only as "John Does" in the original complaint, which was filed on February 11, 2019, and which alleged that the four John Doe defendants used excessive force against the Plaintiff on August 2, 2016.  These defendants were not identified by name until the Plaintiff filed the First Amended Complaint on September 19, 2019 – which was after expiration of the three-year limitations period applicable to the Plaintiff's Section 1983

claims.  *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994)(noting that "[s]ince Congress did

not enact a statute of limitations governing actions brought under [Section] 1983, the courts must

borrow a state statute of limitations" and finding that three-year statute of limitations set forth in

Conn. Gen. Stat. Sec. 52-577 applies to Section 1983 claims in Connecticut).

Invoking Fed. R. Civ. P. 15(c)(1)(C), the Plaintiff argues that the filing of the First

Amended Complaint "relates back" to the filing of the original complaint on February 11, 2019 –

which would make his claims against these four defendants timely.  But I find that the Plaintiff has

failed to satisfy one of the requirements of that rule.  Rule 15(c)(1)(C) provides that "[a]n

amendment to a pleading relates back to the date of the original pleading when … the amendment

changes the party or the naming of the party against whom a claim is asserted, if [the amendment

asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original

pleading] and if, within the period provided by Rule 4(m) for serving the summons and complaint,

the party to be brought in by amendment: (i) received such notice of the action that it will not be

prejudiced in defending on the merits; and (ii) *knew or should have known that the action would*

*have been brought against it, but for a mistake concerning the proper party's identity*."  Fed. R.

Civ. P. 15(c)(1)(C) (emphasis added).  While it is true, as Plaintiff points out (ECF No. 90 at 8-

15), that I extended the period for service in this case under Rule 4(m), Plaintiff cannot satisfy the

requirement embodied in the italicized language in the previous sentence.  Specifically, under the

law of the Second Circuit, the Plaintiff cannot show that Defendants Danek, Mann, Michaud, and

Mancini "knew or should have known that the action would have been brought" against them

during the limitations period "but for a *mistake* concerning" their identities.  "This Circuit has

interpreted [Rule 15(c)(1)(C)] to preclude relation back for amended complaints that add new

defendants, where the newly added defendants were not named originally because the plaintiff did

not know their identities.  We have held that, although Rule 15(c) explicitly allows the relation

back of an amendment due to a 'mistake' concerning the identity of the parties, the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Hogan v. Fischer*, 738 F.3d 509, 517-18 (2d Cir. 2013).

Because the Plaintiff first identified Defendants Danek, Mann, Michaud, and Mancini after the limitations period expired, and because the Plaintiff cannot satisfy the "relation back" rule he invokes,[1] I find that the Plaintiff's claims against these defendants are barred by the applicable statute of limitations.

**2.     Semple**

Defendant Semple seeks to dismiss "any counts as to his supervisory role as he is no longer" Commissioner of Correction. (ECF No. 84 at 1.)  As the Plaintiff notes, however, Semple was replaced as a defendant by a later Commissioner with respect to the Plaintiff's official capacity claims; thus, the motion to dismiss is denied as moot with respect to the official capacity claims against Semple.[2]

**3.     Qualified Immunity**

Defendants Papoosha, Eberle, Aldi, Whidden, and Maiga seek dismissal of counts 1 and 2 – which assert First Amendment retaliation claims – under Rule 12(b)(6) and on grounds of qualified immunity.  The gist of these claims is the Plaintiff's allegation that he was designated as a Security Risk Group ("SRG") member, with all the increased restrictions such a designation entails, on the basis of his constitutionally protected Facebook posts.  Specifically, the Plaintiff alleges that Defendant Papoosha accused him of being a member of the Bloods based on pictures

---

[1] Plaintiff does not raise any other relation back arguments nor does he rely on any tolling doctrines.  *See* ECF No. 90 at 8-15.

[2] As the Plaintiff notes, it does not appear that the Defendants seek, in their current motion to dismiss (ECF No. 84), to resurrect other arguments they previously directed at the First Amended Complaint regarding the individual capacity claims against Semple.  *See* ECF No.84 at 1 and ECF No. 90 at 1 n.1.

and statements the Plaintiff posted on his Facebook page before he was incarcerated.  (ECF No. 81 at para. 43.)    Immediately after the accusation, the Plaintiff was allegedly placed in administrative detention and, the next day, received notice that a hearing would be held to determine whether he was an SRG member affiliated with the Bloods.  At the hearing, which was held ten days later, Defendant Papoosha presented "only the Facebook Posts, which he claimed demonstrated Plaintiff's ongoing allegiance to the Bloods."  (*Id*. at para. 53.)  At the conclusion of the hearing, the Plaintiff was designated as a member of the Bloods and, as a consequence, was placed in a restrictive housing unit, where he was denied access to phone calls, mail, or visiting privileges, and required to  live in unsanitary conditions.  (*Id.* at paras. 58-59.)  Later, he was transferred to another facility, where he was placed in the SRG program, which entails sharply reduced privileges.  (*Id.* at para. 62.)

"To prove a First Amendment retaliation claim under Section 1983, a prisoner must show … (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)(internal quotation marks omitted).  In cases involving facts similar to those here, some of my colleagues on this Court have concluded that the third element – causation – cannot be established where the defendant simply makes evidentiary use of speech to reach a finding leading to a sanction.  *Caves v. Payne*, 2020 WL 1676916, at *4 (D. Conn. April 6, 2020)("Caves' [SRG] designation was not made to punish him for posting on social media or to deter him from doing so in the future.  Rather the social media posts were merely the evidence used to support his SRG designation.  The defendants' use of social media posts and Caves' own statements therein[] is no different than if Caves announced upon his arrival at the facility that he was a gang member and the defendants used those statements to designate him to the SRG unit."); *Martinez v. Payne*, 2020 WL 3630422, at *4 (D. Conn. July

4, 2020)(dismissing First Amendment retaliation claim by inmate who challenged placement in

RHU on the basis of his social media posts because defendants' use of his social media posts as

evidence of his gang affiliation did not satisfy causation element); *Benway v. Aldi*, 2020 WL

4433561, at *6 (D. Conn. July 31, 2020)(same).  These rulings are consistent with Supreme Court

teachings that "[t]he First Amendment … does not prohibit the evidentiary use of speech to

establish the elements of a crime or to prove motive or intent."  *Wisconsin v. Mitchell*, 508 U.S.

476, 489 (1993).  I reach the same conclusion, as there are no facts alleged in the Second Amended

Complaint that suggest that the Plaintiff was placed in SRG simply because he made postings on

Facebook; rather, the facts alleged suggest that the Facebook postings were used as evidence of

his affiliation with the Bloods, and that Papoosha's conclusion (right or wrong) that the Plaintiff

was affiliated with the Bloods was the reason for his designation.  Because the Plaintiff has failed

to allege the causation element of his First Amendment retaliation claims, those claims are

dismissed.

**4.      Rules 8 & 20**

Defendants also argue that the complaint should be dismissed because (1) it does not set

forth a "short and plain statement of the claim," as required by Rule 8, and (2) it joins claims

involving events occurring at different institutions at different times and involving different groups

of defendants, in violation of Rule 20.

The defendants' argument based on Rule 8 fails to take account of Second Circuit

precedent, which sets forth broad, flexible pleading standards.  Under those standards, the prose

in a complaint must so obscure in its meaning as to make it nearly incoherent before it may be

dismissed under Rule 8.  *See, e.g., Riles v. Semple*, 763 Fed. Appx. 32, 34 (2d Cir. 2019) (vacating

dismissal of complaint because, although it "undoubtedly contains extraneous facts and

information, it is not unintelligible" and noting that "[d]ismissal [for failure to satisfy Rule 8] is

usually reserved for those cases in which the complaint is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised."); *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)(although complaint failed to include specific dates on which critical events occurred, the "amended complaint substantially complies with Rule 8."). Even a long, rambling complaint from which some specific facts and legal theories can be gleaned will satisfy those standards. The Second Amended Complaint easily passes this test. It sets forth a coherent chronology of events – from the Plaintiff's designation as a SRG member in January 2016, to his movement through the SRG program, to the physical and sexual assault in August 2016, to the threats from other SRG members in August 2017, to his transfer to protective custody in February 2018, to his placement in punitive segregation, to his removal from protective custody, and to the assault by Blood members against him in August 2018. The Second Amended Complaint also clearly sets forth seven distinct legal claims. (ECF No. 81 at 31-39.) This is sufficient to satisfy Rule 8.

The Defendants' argument based on Rule 20 raises a closer question, because the chronology traced above involves events at four different institutions – Bridgeport Correctional Center (where the plaintiff was designated a Blood and, two years later, was sent for protective custody), MacDougall-Walker (where the plaintiff began the SRG program and where he was allegedly physically and sexually assaulted), Corrigan-Radgowski (where the plaintiff was transferred for Phase 3 of the SRG program and where he was threatened by Bloods members), and Northern (where the plaintiff was assaulted by Bloods members). Different defendants were allegedly involved in the events at each of these institutions, and it is not clear that lumping these events and defendants together for a single trial will be convenient, efficient, or fair to all the defendants. *See* Fed. R. Civ. P. 42(b).

"Rule 20 permits joinder of multiple defendants if any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any questions of law or fact common to all defendants will arise in the action." *Riles*, 763 Fed. Appx. at 35. But this standard, too, is flexibly applied in the Second Circuit, *see id.*, and, in any event, "dismissal is not the appropriate remedy for misjoinder." *Id.* Further, as plaintiff's counsel points out, the plaintiff consolidated multiple claims in this action at my suggestion. (ECF No. 36.)

I conclude that there is enough of a common theme between the disparate events – specifically, the Plaintiff's allegedly wrongful designation as an SRG member and its consequences – to leave the case as a single unit for now, *i.e.*, for purposes of the pleadings, discovery, and any dispositive motions. Should there be a trial, however, the Defendants (and the Plaintiff) are free to seek a separate trial under Rule 42(b) for distinct portions of the case, and the Court may raise this issue *sua sponte* at the pretrial conference.

\* \* \*

For the reasons set forth above, the claims against Defendants Danek, Mann, Michaud, and Mancini in the Fifth Cause of Action and the First Amendment Retaliation claims (First and Second Causes of Action) are dismissed. The case may otherwise proceed.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              September 2, 2020