UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JORDAN SMITH,
    *Plaintiff*,

v.

DANIEL PAPOOSHA, *et al.*,
    *Defendants*.

No. 3:19cv206 (MPS)

### RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Jordan Smith filed this seven count complaint under 42 U.S.C. § 1983 against various Connecticut Department of Correction officials alleging constitutional violations related to his designation as a "Security Risk Group" (SRG) member while incarcerated.[1] Am. Compl., ECF No. 81. The defendants have filed a motion for summary judgment as to counts 1 – 5 on the grounds that Smith failed to exhaust administrative remedies as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, and as to claims against certain defendants on the grounds that they lack personal involvement and/or are entitled to qualified immunity. ECF No. 141.

The defendants' motion for summary judgment as to counts 1 and 2, which allege retaliation, is denied as moot because the Court previously dismissed these claims. See ECF No. 94. The defendants' motion as to count 3, in which Smith asserts a procedural due process claim as to defendants' alleged failure to provide adequate notice regarding his SRG designation hearing and to provide meaningful periodic review, and count 5, in which Smith alleges excessive force in connection with an August 2016 cell extraction, is granted because Smith concedes that he did not exhaust these claims and that judgment should enter against him. ECF No. 145 at 2. In addition,

---

[1] He has since been discharged from custody. ECF No. 141-13 ¶ 1.

defendants argue, and Smith agrees, that the following defendants are entitled to judgment as a matter of law because they lack the requisite personal involvement: Maiga and Semple as to count 4, Semple as to count 6, and Semple, Santiago, and Maiga as to count 7. *See* ECF No. 145 at 13. The defendants' remaining arguments are that Smith failed to exhaust his pretrial conditions of confinement claim in count 4 and, alternatively, that defendant Whidden is entitled to judgment as to that claim because she lacks the requisite personal involvement and/or is entitled to qualified immunity. For the reasons that follow, I grant the motion as to count 4 on failure-to-exhaust grounds.

**I.    FACTS**

The following facts, which are taken primarily from the parties' Local Rule 56(a) statements and supporting exhibits, are undisputed unless otherwise indicated.

In December 2015, Smith was admitted to Bridgeport Correctional Center ("BCC") as a pretrial detainee. Local Rule 56(a)(1) Statement of Facts, ECF No. 141-13 ¶ 25. He was transferred to BCC's Restrictive Housing Unit (RHU) and placed on Administrative Detention as a result of his presumed gang affiliation. ECF No. 81 ¶ 46; ECF No. 112 ¶ 46. After a hearing on January 15, 2016 at BCC, Smith was designated as a SRG member and placed in Phase 1 of the SRG Program while a pretrial detainee. ECF No. 141-13 ¶ 26; ECF No. 145-2, Smith Decl. ¶ 4. SRG Phase 1 inmates are subject to many restrictions including behind-the-back handcuff restraints during recreation time and being handcuffed and placed in leg shackles connected with a tether chain while making phone calls. ECF No. 81 ¶ 67; ECF No. 112 ¶ 67. Under Administrative Directive 9.6, which governs administrative remedies, inmates seeking administrative review of a Security Risk Group Member Designation decision must file an appeal and not a Level 1 Grievance. ECF No. 141-13 ¶ 23. An initial Security Risk Group Member

designation may be appealed by completing and depositing an Inmate Administrative Remedy Form (CN 9602) within 15 calendar days of the notice of decision.  ECF No. 141-13 ¶ 24; ECF No. 141-5 at 20, AD 9.6 § 9.  There is no evidence that Smith filed an appeal within 15 days and Smith does not argue that he did.  Following the SRG hearing, Smith maintains that he was returned to BCC's RHU, where he remained for at least 40 days without access to phone calls, mail, or visiting privileges.  ECF No. 81 ¶ 58.

On February 4, 2016, Smith was transferred to McDougall-Walker and housed in the B-2 housing unit, which housed SRG Phase 2 inmates.  ECF No 141-13 ¶ 31; ECF No. 81 ¶ 61; ECF No. 112 ¶ 61.  He maintains that even though he did not have any disciplinary tickets, he "was initially housed in a section of the B-2 Unit that is typically reserved for inmates that have received DRs or infractions (the 'Ticket Group')," where he remained for 90 days.  ECF No. 81 ¶¶ 63, 64; ECF No. 141-5 at 195.  He alleges that inmates housed in the Ticket Group are subjected to additional restrictions over and above the standard conditions of that SRG Phase.  ECF No. 81 ¶ 63.

On June 2, 2016, while at MacDougall-Walker, Smith received a ticket for SRG affiliation with the Bloods street gang.  ECF No. 81 ¶ 66; ECF No. 112 ¶ 66.  He was regressed from Phase 2 to Phase 1 of the SRG program and was transferred to the B-1 housing unit.  *Id*.; ECF No. 145-2, Smith Decl. ¶ 5.  On June 3, 2016, Smith was housed with Victor Smalls, a convicted inmate who was a high-ranking member of the Bloods.  ECF No. 81 ¶¶ 68-69; ECF No. 145-2, Smith Decl. ¶¶ 6-7.

On June 10, 2016, Smith appealed his regression by submitting an Inmate Administrative Remedy Form (CN 9602) in which he checked off boxes indicating an "Appeal" of a "Classification Decision."  ECF No. 141-5 at 194; ECF No. 145-2, Smith Decl. ¶ 8.  Smith wrote

that he was not told the reason why he was regressed to Phase 1 and was not given a hearing. ECF No. 141-5 at 195. Specifically, in the section in the form that asked the inmate to state the problem, Smith wrote:

> I was designated as SRG in January 2016. I was then transferred and placed in Walkers B-2 housing unit here at Walker [and] assigned to the Walker[']s Phase 2 Programming group. While I was in the Phase 2 Programming group I was issued and found guilty of a Disciplinary infraction. At that time I was removed from the Phase 2 Programming group and placed in a Phase 2 disciplinary report group commonly referred to as a "ticket group." At no time prior to or during my participation in the Phase 2 programming group was I informed of what misconduct could result in my removal from the phase two programming group and placed in a ticket group. At no time prior to or during the time I was in the ticket group was I notified of any regression or reclassification hearing that may have been held that considered regressing or reclassifying me to a ticket group. At no time prior to my reclassification to the ticket group was I permitted limited involvement in any way feesible [sic] in the re-classification decision or hearing that may have been held. See A.D. 9.2 § 15. At no time was I informed in writing of the decision to place me in a ticket group. See A.D. 9.2 § 15.
> 
> On 6-2-16 while I was in the ticket group I was moved to B-1 housing unit and placed in Phase I of the SRG program. At no time was I informed verbally or in writing why I have been placed in Phase I of the SRG program. At no time was I informed or notified (for limited involvement) of any regression or re-classification hearing that may been held to determine my reclassification to Phase 1. See A.D. 9.2 § 15. At no time was I informed or notified in writing of the reasons why or the decision to re-classify me to Phase 1. For all the foregoing reasons I am requesting to be re-classified back to my original Phase 2 programming group.

ECF No. 141-5 at 195. Smith believed that the proper administrative procedure for appealing a regression decision within the SRG Program was to file an "Appeal of a Classification Decision" as set forth in the Administrative Directive 9.6, § 7, which provides:

> Appeal of a Classification Decision. A classification decision may be appealed by completing and depositing CN 9602, Inmate Administrative Remedy Form, in the Administrative Remedies box within 15 calendar days of a decision regarding:
>
> A. risk level decisions;
> B. needs level decisions, except medical and mental health in consultation with relevant health care providers;
> C. community release, except decisions made by the Board of Pardons and Paroles;
> D. job or program assignments;

4

> E. extended family visits; and,
> F. Special Monitoring Status (with the exception of inmates completing Administrative Segregation, Chronic Discipline, Security Risk Group Member Program or Special Needs Management).
> An appeal of a classification decision made by facility staff shall be decided by the Unit Administrator.

ECF No. 141-5 at 19.  The DOC's SRG Manual states "Per A.D. 9.6, Section 7d, inmates may appeal a regression decision made by the review committee to the Unit Administrator."  ECF No. 152 at 17.

The DOC construed Smith's claims as requiring a grievance as opposed to an appeal and on June 17, 2016, Smith was notified via Form CN 9606 titled "Grievance Returned Without Disposition" that his June 2016 submission was "Returned Without Disposition" because he failed to comply with the informal resolution process required for grievances set forth in section 6(A) of Administrative Directive 9.6.  ECF No. 141-5 at 196; ECF No. 145-2, Smith Decl. ¶¶ 10, 12.  The form indicated that an inmate must first "attempt to resolve a problem through the Inmate Request System prior to filing a grievance" and "shall attach CN 9601, Inmate Request Form, containing the employee's response or explain why it is not attached[.]"  ECF No. 141-5 at 196.  The form further stated that Smith could "resubmit [his] grievance when it is in compliance with Administrative Directive 9.6[.]"  *Id.*

On June 10, 2016, Smith submitted an Inmate Request Form (CN 9601) to Defendant John Aldi, the SRG Coordinator at the time, concerning his regression to Phase 1.  ECF No. 148 at 58.  On June 21, 2016, Aldi responded and affirmed Smith's regression.  ECF No. 148 at 60.  Smith did not subsequently resubmit an Administrative Remedy Form with respect to this issue although he did submit other grievances – a July 22, 2016 Inmate Administrative Remedy Form indicating that he was filing an "Appeal" of a decision to reject "unacceptable correspondence" and a September 13, 2016 Inmate Administrative Remedy Form indicating that he was filing an "appeal"

5

of a "Media Review Committee Decision" denying him access to a book entitled "Reclaim Your Sovereignty."  ECF No. 141-5 at 198; ECF No. 141-5 at 204.

In July 2016, Defendant Whidden, Director of Security, completed a "Security Risk Group Member Six-Month Review" in connection with Smith's SRG status.  ECF No. 148 at 66, 68. Whidden wrote that Smith was currently in Phase 1 of the SRG program, having been designated a SRG member on January 15, 2016, and "has received 6 disciplinary reports within the past 6 months."  ECF No. 148 at 66.  Whidden "concur[red] with the facility's recommendation that inmate Smith's SRG status remains pending his successful completion" of the SRG program.  *Id.*

According to Smith, on August 2, 2016, while at McDougall-Walker, his cellmate Smalls threatened to kill him if he complied with a DOC order to remove a covering that Smalls had placed over the window, which resulted in a cell extraction.  ECF No. 81 ¶ 80; ECF No. 141-13 ¶ 34.  Smith was punished and placed in punitive segregation.  ECF No. 81 ¶ 92; ECF No. 112 ¶ 92.

More than two years after his initial designation as a SRG member, Smith filed a grievance on March 10, 2018 in which he stated that he was improperly classified as a SRG member in January 2016.  ECF No. 141-3 at 42.  He further stated that he was transferred to the Phase 2 Ticket Group, regressed to Phase 1, and subjected to a cell extraction for his cellmate's conduct.  ECF No. 141-3 at 42-43.  He sought removal of the SRG designation and restoration of Risk Reduction Earned Credit.  *Id.* at 43. In response, District Administrator Maldonado issued a letter acknowledging receipt of Smith's appeal of his initial January 2016 SRG designation and explaining that

> [a] review of your Security Risk Group Designation decision indicates that you do not meet the criteria to file an appeal as stated in A.D. 9.6 Inmate Administrative Remedies section 9[.]  An **initial** Security Risk Group Member designation may be appealed by completing and depositing a CN9602 form and placing [it] in the

> Administrative Remedy box within 15 calendar days of the notice of designation. The initial Security Risk Group designation was January 22, 2016, which makes this appeal attempt well beyond the time limit set forth in this directive. For this reason your designation will remain and your documents are being returned to you unprocessed.

ECF No. 141-3 at 44. Smith submitted a second grievance as to the same issues dated March 10, 2018, which was "Returned without Disposition" by the Administrative Remedies Coordinator. ECF No. 141-3 at 48-49.

## II.   LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Philip Morris USA, Inc*., 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co*., 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).

## III.   DISCUSSION

Smith's due process conditions of confinement claim in count 4 is asserted against

defendants Papoosha and Eberle, who worked at BCC and allegedly were involved in Smith's initial SRG designation in January 2016; Maldonado, the District Administrator responsible for overseeing BCC; Aldi, the acting SRG Coordinator; and Whidden, the Director of Security responsible for security policies within the CTDOC, including the SRG program. Smith alleges that "[w]hile he was a pretrial detainee, he was subjected to unreasonable and/or punitive restrictions and conditions of confinement (the "Pretrial Conditions") including but not limited to":

> (a) Housing Plaintiff in Bridgeport's RHU for an unreasonable length of time before and after Plaintiff's SRG designation, despite the fact that Plaintiff had not yet received a single ticket or disciplinary report since being admitted to CTDOC custody in December 2015;
> (b) Housing Plaintiff in the "Ticket Group" of SRG Phase 2, despite the fact that Plaintiff had not yet received a single ticket or disciplinary report since being admitted to CTDOC custody in December 2015;
> (c) Housing Plaintiff in SRG Phase 1 as an SRG Blood member, despite Plaintiff's repeated assertions that he had not been affiliated with the Bloods since he renounced his affiliation in 2011, as well as evidence suggesting that Plaintiff was being actively extorted by other SRG inmates;
> (d) Housing Plaintiff in SRG Phase 1 in a cell with Inmate Smalls, an SRG inmate that was a violent offender and known high-ranking member of the Bloods, despite Plaintiff's repeated assertions that he had not been affiliated with the Bloods since he renounced his affiliation in 2011, as well as evidence suggesting that Plaintiff was being actively harassed and/or extorted by other SRG inmates, including Inmate Smalls; and/or
> (e) Housing Plaintiff in punitive segregation, including in-cell restraints, as punishment for the actions of Plaintiff's cellmate, Inmate Smalls, on August 2, 2016.

ECF No. 81 ¶ 196. The conditions Smith allegedly faced in the Bridgeport RHU, the Ticket Group, and SRG Phase I are detailed earlier in the complaint and incorporated by reference in Count 4. The conditions in the RHU include being housed in a dirty cell with a broken toilet "filled with urine and feces"; infrequent showers in "a filthy and un-sanitized shower"; given "unclean underclothes"; forced to eat in "a filthy and odor-filled cell"; placed on out-of-cell restraints status; denied recreation and access to programs; and allowed telephone calls only if approved on a case by case basis. While at MacDougall-Walker in the SRG Phase 2 program (the "Ticket Group"),

8

Smith alleges that phone calls, visitation, and mail were limited; access to religious services was denied; and recreation time was limited to one hour a day. In Phase 1, Smith had all these restrictions plus the additional restriction of behind-the-back handcuff restraints during recreational time, which he was forced spend with inmates who were classified as SRG Bloods. *See* ECF No. 81 ¶¶ 47- 48, 62-63, 67. According to Smith, these "Pretrial Conditions [of confinement] posed, alone or in combination, an unreasonable risk of serious damage to [his] physical or mental health and were excessive in relation to any legitimate security or safety concern."[2] *Id*. ¶ 197.

Defendants argue that they are entitled to summary judgment because Smith failed to exhaust administrative remedies as to this claim. Smith maintains that he exhausted and points to his June 10, 2016 appeal.

Exhaustion of Administrative Remedies

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a Section 1983 lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a). A grievance "must allege facts sufficient to alert corrections officials to the nature of the claim, and provide enough information about the conduct at issue to allow prison officials to take appropriate responsive measures." *Singh v. Lynch*, 460 F. App'x 45, 47 (2d Cir. 2012) (internal quotation marks). Exhaustion of all available administrative remedies must occur regardless of whether the

---

[2] "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). "A pretrial detainee must satisfy two prongs to prove a deliberate-indifference claim. First, an objective prong showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Id.* Second, a subjective prong "showing that the officer acted with at least deliberate indifference to the challenged conditions. *Id.* Defendants have not challenged the merits of Smith's conditions of confinement claim, and the Court does not consider that issue here.

administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all prison-imposed procedural rules regarding the grievance process prior to commencing an action. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). "An inmate's failure to exhaust administrative remedies is excusable only if the remedies are in fact unavailable." *Baltas v. Rivera*, No. 3:19CV1043(MPS), 2020 WL 6199821, at *8 (D. Conn. Oct. 22, 2020). A remedy is unavailable when: (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use," meaning that "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643-44 (2016).

As noted, the administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, which provides that for all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority and that are not specifically identified in Sections 4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the Inmate Grievance Procedure set forth in Section 6. ECF No. 141-5 at 12. Section 4(B) provides that an appeal of a classification decision shall be in accordance with Section 7. Section 7 in turn provides that an appeal of a "classification decision" must be made using an Inmate Administrative Remedy Form (CN 9602) within 15 calendar days of the adverse decision.

A unit administrator must respond within 15 business days of the appeal with a decision, which "shall not be subject to further appeal." *Id.*

The parties disagree whether Smith should have filed a grievance or an appeal. Defendants contend that the concerns Smith articulated in his June 10 submission about being housed in the ticket group without having received a ticket and being regressed from Phase 2 to Phase 1 do not "fall within the scope of classification decisions which may be appealed for the purposes of Administrative Directive 9.6." ECF No. 141-1 at 16. Smith, on the other hand, points to the DOC's SRG Manual, which states that "inmates may appeal a regression decision made by the review committee to the Unit Administrator." ECF No. 152 at 17. He argues that he properly filed an appeal of the regression decision to move him from Phase 2 to Phase 1 of the SRG Program. ECF No. 145 at 6-7. I need not resolve which procedural vehicle was proper because even assuming that Smith was correct in filing an appeal (rather than a grievance), he still did not exhaust his claims in count 4 because the June 2016 appeal did not put the defendants on notice as to the specific conditions and restrictions Smith alleges in his substantive due process claim in count 4.[3] "Because the exhaustion requirement is intended to afford prison officials an opportunity to address the issue internally, . . . the inmate must include sufficient information to enable prison officials to address the same claim asserted in federal court." *Baltas v. Rivera*, No. 3:19CV1043(MPS), 2020 WL 6199821, at *8 (D. Conn. Oct. 22, 2020). *See also Lewis v. Cook*, No. 3:19CV1454(JCH), 2021 WL 4477392, at *7 (D. Conn. Sept. 30, 2021) (Plaintiff failed to exhaust some of his claims regarding defendants' deliberate indifference to his conditions of

---

[3] Because I conclude that Smith did not exhaust his remedies as to Count 4 even if he was correct in filing an appeal, I need not address his alternative argument that the DOC's failure to process his appeal as the correct remedy means that no remedy was "available" under *Ross v. Blake*, 578 U.S. 632 (2016). *See* ECF No. 145 at 9-12.

11

confinement where his grievances failed to mention "many of the conditions that he notes in his Complaint, including eating in a dirty cell; having no power; being limited to three showers a week; stripping before leaving the cell; being confined to the cell for twenty-three hours a day on weekdays and all weekend; being handcuffed and tethered when outside of the cell; and never being able to clean his cell"); *Garcia v. Univ. of Connecticut Health Care Ctr.*, No. 3:16CV852(JCH), 2018 WL 5830840, at *6 (D. Conn. Nov. 7, 2018) (Plaintiff did not exhaust retaliation claims where his grievance contained no factual information as to the claim and indicated only that he was "placed in restraint in retaliation for his conduct."); *Shehan v. Erfe*, No. 3:15CV1315(MPS), 2017 WL 53691, at *8 (D. Conn. Jan. 4, 2017) (Plaintiff exhausted only those claims "that he actually asserted in the grievance" and as a result, because his "grievance makes no mention of any defendants checking on and refusing to loosen the restraints, his inability to feed himself or see to his bodily functions, or deliberate indifference to any need for medical care[,]" plaintiff did not exhaust his administrative remedies as to those claims).  Here, Smith's June 2016 appeal does not mention the specific conditions of confinement that he describes in his complaint related to housing him in BCC's RHU before and after his SRG designation, ECF No. 81 ¶¶ 47-48, 196(a); housing him in the "ticket group" in SRG Phase 2, *id.* ¶¶ at 62-64, 196(b); housing him in SRG Phase 1 together with a dangerous inmate, Victor Smalls. *Id.* ¶¶ 67, 68, 196(c), (d); or placing him in punitive segregation as punishment for Smalls' actions on August 2, 2016. *Id.* ¶ 196(e).[4]  Rather, Smith's appeal describes these various housing assignments as procedural due process violations in that he was denied notice and/or a hearing. *See* ECF No. 141-5 at 195 (stating that "[a]t no time" was he informed about the reasons for being placed in a ticket

---

[4] Smith could not have exhausted his August 2, 2016 placement in punitive segregation for another reason, which is that that incident postdated his June 10, 2016 appeal.

12

group or "notified of any regression or reclassification hearing that may have been held that considered regressing or reclassifying me to a ticket group.") But Count 4 makes no mention of notice issues. Instead, the complaint alleges various conditions of his confinement, such as a dirty cell, broken toilet, limitations as to mail, phone calls and visitation, and being placed in restraints. The June 2016 appeal takes issue with lack of notice and/or hearing, ECF No. 141-5 at 195, or as defendants describe it, "process issues," ECF No. 147 at 3, and cannot be read to alert the DOC that Smith was complaining about the particular conditions of confinement he alleges in the complaint. As a result, Smith did not exhaust his administrative remedies as to these conditions and therefore, the defendants' motion for summary judgment is granted.[5]

## IV.  CONCLUSION

For these reasons, the defendants' motion for summary judgment (ECF No. 141) is granted as to: counts 3 - 5, defendant Semple as to count 6, and defendants Semple, Santiago, and Maiga as to count 7.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            January 4, 2022

---

[5] As a result, I need not reach the defendants' alternative argument as to Whidden.